UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHERRY SMITH,

       Plaintiff,

v.                                        Case No. 2:20-cv-261-NPM

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____

**OPINION AND ORDER**

Sherry Smith seeks judicial review of a denial of her applications for disability insurance benefits and supplemental security income. The Commissioner of the Social Security Administration filed the transcript[1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 39). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

## I.    Eligibility for Disability Benefits and the Administration's Decision

### A.    Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like standing or reaching, nonexertional abilities like seeing or hearing, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when such functional limitations preclude a return to past work or doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.    Factual and procedural history

On April 21, 2017, Smith applied for a period of disability and disability insurance benefits and supplemental security income (Tr. 11, 39, 116, 117, 225-226). She asserted an onset date of November 1, 2015. (Tr. 225). As of the alleged onset date, Smith was 37 years old, and she has at least a high school education. (Tr. 22, 39, 47, 118, 131, 225). Her work history includes corrections officer, deputy sheriff, rural mail carrier, secretary/interpreter, and house cleaner. (Tr. 22).

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv); *see also* 20 C.F.R. §§ 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by impairment(s)), 416.945(b)-(d) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

Smith's applications were denied initially on June 26, 2017, and upon reconsideration on October 18, 2017. (Tr. 116, 117, 144, 145). At Smith's request, Administrative Law Judge Maria C. Northington held a hearing on October 1, 2018. (Tr. 37-89). The ALJ issued an unfavorable decision on March 28, 2019, finding Smith not disabled from November 1, 2015, through the date of the decision. (Tr 11-24).

Smith's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). Smith then brought the matter to this Court, and the case is ripe for judicial review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 22).

## C.     The ALJ's decision

An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

3

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.' " *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See Washington*, 906 F.3d at 1359; 20 C.F.R. §§ 416.912, 404.1512 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a

very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ found Smith met the insured status requirements through December 31, 2020. (Tr. 14). At step one of the evaluation, the ALJ found Smith had not engaged in substantial gainful activity since her alleged onset date. (Tr. 14). At step two, the ALJ characterized Smith's severe impairments as: "obsessive-compulsive disorder (OCD) and post-traumatic stress disorder (PTSD)." (Tr. 14). At step three, the ALJ determined Smith did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 14).

As the predicate to step four, the ALJ arrived at the following RFC:

[T]he claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 [§§ C.F.R.] 404.1567(b) and 416.967(b) such that the claimant retains the capacity to perform light work with the ability to occasionally lift and/or carry up to 20 pounds as defined in the regulations, as well as lift/carry 10 pounds frequently. This includes sedentary work as defined in the regulations. The claimant has no limits for sitting in an eight-hour workday. She is capable of standing and/or walking for up to six hours in an eight-hour workday. She is able to perform occasional postural functions of climbing ramps/stairs, kneeling, and stooping. She is to perform no crawling, no crouching and no climbing of ladders/ropes/scaffolds. The claimant is to perform no work that would involve hazardous situations such as work at unprotected heights or work around dangerous machinery that may cause harm to self or others. No work

5

with vibratory tools or equipment. She retains the capacity to understand, remember and carry-out simple instructions and perform simple routine repetitive tasks as consistent with unskilled work. In the course of work, the claimant is to have no contact with the public with the exception that incidental contact is not precluded and telephonic contact is not precluded. The claimant is to have only occasional contact with coworkers and supervisors, occasional being defined as occasional interaction and coordination, but not necessarily proximity to the same.

(Tr. 16).

At step four, the ALJ found Smith capable of performing past relevant work as a housecleaner, finding this work is not precluded by her RFC. (Tr. 22). Alternatively, the ALJ proceeded to step five and found Smith could perform jobs that existed in significant numbers in the national economy. (Tr. 22). In support, a vocational expert opined during the ALJ hearing that four occupations represent the kinds of jobs that an individual with Smith's age, education, work experience and RFC could perform:

(1) small products assembler, DOT 729.687-010, light exertional level, SVP 2;

(2) merchandise marker, DOT 209.587-034, light exertional level, SVP 2;

(3) order clerk, DOT 209,567-014, sedentary exertional level, SVP 2; and

(4) final assembler, DOT 713.687-018, sedentary exertional level, SVP 2.

(Tr. 22-23).[5]

---

[5] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill

## II.      Analysis

Smith's appeal asks whether the ALJ properly evaluated the medical opinions from a psychological consultative examination. (Doc. 39, p. 13).

### A.      Standard of review

The Court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported

---

categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.    Whether the ALJ properly evaluated Steven F. Wu, Ph.D.'s medical opinions**

The ALJ was confronted with medical records from treating physicians and other medical providers indicating little to no functional limits related to mental health and Smith's subjective complaints pointing in the opposite direction. (*See* Tr. 54-55, 86). To further inform her analysis, and on her own initiative, the ALJ ordered a consultative psychological examination. (Tr. 86). So, on October 16, 2018, Dr. Steven Wu, a licensed psychologist, conducted a psychological evaluation at the ALJ's request. (Tr. 86, 683-690). Wu reviewed Smith's records from Charlotte Behavioral Health Care, Inc. and interviewed Smith, who also provided a mental health history. (Tr. 683). Wu further assessed Smith by administering a World Health Organization Disability Assessment Schedule 2.0 (36-item Self Report). (Tr. 683).

In the biopsychosocial history, Wu acknowledged that he received Smith's history from her and that it could be subject to inaccuracies for a variety of reasons.

(Tr. 683-684). Wu noted that on September 15, 2020, Smith went to the emergency room because she thought she was having a heart attack, but it was a panic attack. (Tr. 684). Wu observed:

> [Smith] was dressed and groomed clean, neat and appropriate. Attitude was cooperative, behavior appropriate. Posture was unremarkable, but ambulation was limping. She sat still. She is an overweight Caucasian female in mild emotional and severe physical distress today. Eye contact was good. Speech was pressured and overinclusive. Rapport between us was good and she seemed to perceive me as non-threatening. Recent and remote episodic memory was intact and she was deemed a reliable historian. Her ability to socially interact with me was satisfactory. Thought process was clear, coherent, and organized. Thought content was reality-oriented with no florid or overt delusions or paranoid ideation. No sensory-perceptual disturbances were evident. Affect was stable, range full, intensity appropriate. Mood was anxious. Motivation was satisfactory.

(Tr. 685-686).

Ultimately, Wu diagnosed Smith with, among other things, Bipolar II Disorder, PTSD, Social Anxiety, and OCD. (Tr. 687). He found Smith's onset of Bipolar II Disorder began in her pre-teens, onset of OCD began in her teens, and onset of PTSD and social anxiety began as an adult after she began working as a law enforcement officer in 2007. (Tr. 684, 687). The PTSD caused her to quit working as a law enforcement officer in October 2015 due to job stress and witnessing too many motor vehicle accidents and fatalities. (Tr. 687). "She is interested in returning to some form of work that is not stressful but not until she can overcome her psychological issues." (Tr. 687). Wu concluded:

> During my one[-]hour interview, I spotted issues with walking and sitting, but not standing. I had no opportunity to observe lifting, carrying, handling

> objects or traveling. I did not notice any hearing or speaking problems. Her ability to comprehend, recall, and sustain concentration and persistence was adequate during the hour. Social interaction and adaptation were adequate with me for one hour, but will be problematic during a 40-hour work-week because of social anxiety, PTSD, and Bipolar Disorder.

(Tr. 687). His prognosis for sustainable employment was poor because of the severity of these diagnoses, and Wu opined Smith will "need extensive individual psychotherapy and management of anxiety before being able to return to work." (Tr. 687). Wu also found Smith competent to handle her own funds. (Tr. 687).

Wu simultaneously completed a Medical Source Statement of Ability to do Work-Related Activities (Mental). (Tr. 688-690). Wu found Smith had no limitations in her ability to understand, remember, and carry out instructions. (Tr. 688). He also determined that Smith had: (1) extreme limitations in interacting appropriately with the public and responding appropriately to usual work situations and to changes in a routine work setting; (2) marked limitations in interacting appropriately with co-workers; and (3) no limitations in interacting appropriately with supervisors. (Tr. 689). Wu identified the following factors to support his opinion: Smith's PTSD, social anxiety, and mood swings. (Tr. 689). Wu also determined that Smith's capabilities, such as ability to concentrate, persist or maintain pace, were affected by anxieties, and her ability to adapt or manage oneself was impaired due to mood. (Tr. 689). Wu found Smith's OCD rituals, flashbacks,

panic while driving, panic symptoms, and a trip to the emergency room support these limitations. (Tr. 689).

Because a disability finding hinges on functional limitations and not just the existence of impairments, the ALJ needed to assess Wu's opinions about Smith's abilities despite, and limitations because of, her impairments. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). These opinions are assessed for their persuasiveness based on the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). Wu's judgments about the nature and severity of Smith's impairments, Smith's medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis merely constitute "other medical evidence" in the record. 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

The ALJ found Wu's opinions about what Smith could and could not do in a work setting unpersuasive for several reasons. (Tr. 21). First, the opinions were based on a one-time examination, and second, Wu's findings were not consistent with ongoing treatment records from 2017 and 2018 that generally show Smith doing

well and having an unremarkable mental status.[6]  Third, Wu's finding of marked and extreme limitations are not supported by his observations that Smith's social interaction and adaption were adequate during the exam, and her comprehension, recall, and ability to sustain concentration and persistence also appeared adequate. (Tr. 21). Fourth, Wu's marked and extreme limitations were inconsistent with Smith's activities of independent living, such as driving in public, shopping in public, going to church, and watching her young nephew. (Tr. 21). Fifth, Wu's opinion appears to rely heavily on Smith's subjective reports noting that the limitations dated back to 2007—many years before his examination and Smith's alleged onset date. And Sixth, Wu also relied on the WHODAS 2.0 in assessing Smith, despite the fact that her subjective reports were not consistent with the observations of ongoing treatment providers, her mental health treatment history, or her activities. (Tr. 21). So instead, the ALJ found Smith's RFC is supported by clinical observations, Smith's treatment history, and her activities. (Tr. 21).

---

[6] Smith begins her argument by citing case law for the general proposition that an ALJ's material misstatement of a doctor's opinion necessitates reversal. (Doc. 39, p. 13) (citing *Williams v. Comm'r of Soc. Sec.*, No. 6:18-cv-350-ORL-40GJK, 2019 WL 957885, *4 (M.D. Fla. Feb. 12, 2019), *report and recommendation adopted*, No. 6:18-cv-350-ORL-40GJK, 2019 WL 952309 (M.D. Fla. Feb. 27, 2019)). But here, the ALJ accurately summarized Wu's evaluation and Smith does not take issue with the summary. (Tr. 19; Doc. 39, p. 14). Smith instead takes issue with the ALJ's finding that Wu's opinion was unpersuasive because he examined Smith one time. (Tr. 21, Doc. 39, p. 14). Smith argues that Wu's opinion is not based simply on a one-time examination, but also on a review of the medical records. (Doc. 39, p. 14). This argument is unconvincing because the ALJ's statement is accurate—Wu examined Smith one time and has no history of treatment with her. In fact, length of the treatment relationship is one factor an ALJ must consider. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

Smith complains the ALJ's treatment of Wu's opinion is not supported by substantial evidence, but Smith's points of error lack merit. First, Wu's opinion lacked supportability. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As the ALJ noted, Smith continued working for many years as a law enforcement officer with her mental impairments, and nothing in the record demonstrated an intervening reason for any alleged worsening at or around the alleged disability onset date. (Tr. 20, 227-230, 684). The ALJ also found the limitations assessed by Wu were not supported by his own observations during examination. (Tr. 21). For example, Wu noted Smith's ability to socially interact was "satisfactory" (Tr. 685) and he observed "[s]ocial interaction and adaptation were adequate with me for one hour…" (Tr. 687;); yet he found mostly marked and extreme limitations in social interaction (Tr. 689). Also, Wu found Smith's comprehension, recall, and ability to sustain concentration and persistence were adequate (Tr. 687), even though Smith was anxious and in "mild emotional and severe physical distress" during the exam. (Tr. 685-686). Nevertheless, Wu opined Smith's persistence and pace were affected by anxieties and her ability to manage self was impaired due to mood swings.

Second, Wu's opinion lacked consistency with other medical evidence. For example, Smith's treating mental health providers reported that Smith was improving with therapy and medication management (Tr. 18-19, 21, 459, 502, 508, 513, 622, 630, 635, 638, 653). In addition, those providers noted that Smith had an

unremarkable mental status examination during her visits (Tr. 18-19, 21, 458, 472, 502, 505, 508, 512, 621, 629, 637, 652). During several appointments with her mental health providers, Smith reported she was doing well with treatment—therapy and medication (Tr. 620, 627, 635, 650-651). In fact, because Smith's mental health improved, she ended her therapy sessions in July 2017, but continued medication management (Tr. 501-503), making more improvements in her mental health for the remainder of 2017 and into 2018 (Tr. 18-19, 620, 622, 627, 630, 635, 638, 650-51, 653).

Wu's opinion also lacked consistency with Smith's activities of daily living. For example, Smith reported she was able to live on her own, was able to manage her own money, was able to drive, was able to prepare her own meals, was able to do chores, was able to shop in public, was able to go to church, and was able to engage with her young nephew (Tr. 17, 21, 47-48, 51-52, 273-274, 468, 486-487, 685). Moreover, in February 2017, Smith even denied that she had difficulty performing work or work-like activities (Tr. 487).

Third, Wu over-relied on subjective complaints including the WHO scale, which is based on subjective complaints. It is well-established in the Eleventh Circuit that a claimant's subjective allegations are not an acceptable basis for a medical opinion. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (affirming ALJ's decision to discount a treating physician's opinion that was

primarily based on the claimant's subjective allegations); *Markuske v. Comm'r of Soc. Sec.*, 572 F. App'x 762, 765-766 (11th Cir. 2014) (affirming ALJ's decision to give little weight to physician's opinion that was based on the claimant's subjective complaints because the degree of restrictions was not supported by record evidence). Besides, Smith has not shown how the moderate disability rating under WHODAS 2.0 (Tr. 686-687) supports a determination that she is disabled or how it would further limit her already highly restrictive mental RFC finding, which limited her to no public contact except incidentally or by phone and only occasional interaction with coworkers and supervisors. (Tr. 16).

Smith fails to cite any contradictory record evidence or even take issue with the ALJ's statement that ongoing treatment records from regular providers during 2017 and 2018 show Smith was generally doing well and had unremarkable mental status examinations. In fact, multiple records support this finding, including records in which Smith reported she was doing well with treatment, therapy, and medication. (Doc. 39, pp. 23-24 (citing Tr. 458, 459, 502, 505, 508, 512, 513, 620, 621, 622, 627, 629, 630, 635, 637, 650, 651, 638, 653)). Besides, Smith cited no authority or requirement that when an ALJ orders a consultative examination, she must either adopt the findings or order a supplemental or additional examination. In sum, the ALJ's decision that Wu's opinion was unpersuasive is supported by substantial evidence.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard.

Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on September 28, 2021.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE